Filed 6/28/24 (see dissent)

## <u>CERTIFIED FOR PUBLICATION</u>

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KYLE ANDREW WILLIAMS,<br><br>    Defendant and Appellant. | F085868<br><br>(Super. Ct. No. 1422550)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County. Dawna Reeves, Judge.

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE DISSENTING OPINION**

## INTRODUCTION

Petitioner Kyle Andrew Williams petitioned the trial court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for attempted murder (§§ 187, 664). The trial court denied the petition at the prima facie stage after determining that petitioner was "prosecuted and convicted as the direct perpetrator of the attempted murder" and therefore was ineligible for resentencing as a matter of law. Notably, the court based this determination in part on its review of transcripts from petitioner's preliminary hearing and plea colloquy.

On appeal, petitioner contends the court erred in denying his facially sufficient petition at the prima facie stage by engaging in impermissible factfinding based on the preliminary hearing transcript and change of plea. He further contends that neither his plea nor his counsel's stipulation to a factual basis for the plea rendered him ineligible for resentencing.

For reasons we explain, we conclude the record of conviction does not establish petitioner's ineligibility for resentencing as a matter of law. Accordingly, we reverse.

## FACTUAL BACKGROUND

Several percipient witnesses testified at the preliminary hearing. We briefly summarize their testimony from the preliminary hearing transcript, while acknowledging that the propriety of the court relying on this testimony is a subject of dispute in this appeal.

On May 19, 2010, Donald W.[2] drove his minivan to an apartment complex in Modesto. With him were his nephew, Nathaniel W., and Nathaniel's friends, brothers

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

Brandon R. and Michael R., who went to the apartment complex to sell someone marijuana. Michael was armed with a firearm because Brandon asked him to bring a gun. Donald was in the driver's seat, Nathaniel was in the front passenger seat, Michael was in the rear passenger side seat, and Brandon initially was in the rear driver's side seat.

At some point while they were at the apartment complex, a gold Saturn arrived and blocked in the minivan. Michael removed his firearm from his pocket and loaded it, before putting it back in his pocket in its holster. Brandon got out and stood on the driver's side of the minivan. Petitioner got out of the Saturn; someone else remained in the Saturn's driver's seat.

Petitioner got into the rear driver's side seat of the minivan. The van's door closed behind him. Petitioner asked about the marijuana and said it looked fine or smelled good, but then pulled a revolver from his backpack and pointed it at Michael's head. Petitioner said, "You're dead. I've got nothing to live for. Times are tough. I'm robbing everybody for everything." According to Donald, petitioner also pointed the gun at Donald's head. Petitioner demanded the keys to the minivan. Donald gave petitioner the keys. Michael turned to look at the car door to see if he could escape, then turned back toward petitioner. Around the same time, petitioner shot Michael in the face. Michael estimated that the entire encounter lasted 45 seconds to two minutes.

Michael survived the shooting but spent 14 days in the hospital.

## PROCEDURAL HISTORY

On April 18, 2011, the Stanislaus County District Attorney filed an information charging petitioner with premeditated and deliberate attempted murder of Michael (§§ 187, subd. (a), 664; count I), robbery of Donald (§ 211; count II), and making criminal threats against Michael (§ 422; count III). As to count I, it was alleged that petitioner personally and intentionally discharged a firearm, proximately causing great bodily injury (§ 12022.53, subd. (d)). As to counts II and III, it was alleged that

petitioner personally and intentionally used and discharged a firearm (§ 12022.53, subds. (b), (c)).

On August 7, 2012, petitioner entered a plea of no contest to the attempted murder of Michael on count I, and the second degree robbery of Donald on count II. On count I, petitioner admitted enhancements for personal use of a firearm (§ 12022.53, subd. (b)) and for causing great bodily injury (§ 12022.7). Petitioner did not admit the allegation that the attempted murder was premeditated, and the prosecutor indicated the parties' understanding was that this allegation would be dismissed. All remaining counts and enhancements were dismissed. Counsel for all parties stipulated that the preliminary hearing transcript provided a sufficient factual basis for the plea. In addition, the prosecutor offered the following factual basis for the plea, to which defense counsel also stipulated:

> "On May 19th, 2010, [petitioner] took at least one direct but . . . ineffective step toward killing the victim Michael [R]. [Petitioner] intended to kill victim Michael [R.]. [Petitioner] personally used a firearm in the commission of the offense. And [petitioner] personally inflicted great bodily injury on Michael [R.] during the course of the felony. [¶] In addition, [petitioner] took property not his own from the presence, possession and immediate presence of Donald [W.]. The property was taken against the will of Donald [W.]. [Petitioner] used force . . . and/or fear when taking the property to prevent the resistance, and [petitioner] intended, while using the force or fear, . . . with the intent to deprive [Donald] of it permanently. This took place in Stanislaus County on or about 19th day of May, 2010."

Petitioner was sentenced to an aggregate term of 23 years.

On August 29, 2022, petitioner filed a section 1172.6 petition for resentencing on his conviction for attempted murder. The People opposed the petition on the ground the charge and plea established petitioner's ineligibility for resentencing as a matter of law, and substantial evidence from the preliminary hearing supported a finding that petitioner acted with intent to kill. The People argued that no facts were presented at the preliminary hearing to support a theory of implied malice and the charge of malice

4.

aforethought did not permit a plea based on imputed malice. The People argued the undisputed facts showed that petitioner shot Michael in the head and there was therefore no basis to conclude he was convicted under a natural and probable consequences theory. In reply, petitioner argued that he had pled a prima facie case and was entitled to an evidentiary hearing.

The court held a hearing on the petition. The People argued petitioner was not entitled to resentencing because he pled guilty to premeditated attempted murder[3] with personal use of a firearm. In its written decision, the court explained that it had reviewed the complaint, transcripts of the change of plea hearing and preliminary hearing, and the abstract of judgment. Based on review of these documents, the court determined that petitioner was prosecuted as a direct perpetrator and "not on a theory of felony murder or a theory of natural and probable consequences." The court noted petitioner was originally charged with premeditated and intentional attempted murder involving personal and intentional discharge of a firearm. He then entered a no contest plea to attempted murder with malice aforethought and admitted personally using a firearm and personally inflicting great bodily injury. The court also noted that the preliminary hearing testimony "demonstrates that [petitioner] was accused of personally firing a firearm directly at Michael [R.] during a transaction for drugs." Accordingly, the court determined, petitioner was prosecuted as the direct perpetrator of the attempted murder and "would still be convicted of attempted murder" under current law. On that basis, the petition was denied.

---

[3] In actuality, petitioner pled no contest to attempted murder and did not admit the premeditation allegation.

DISCUSSION

## I.    Overview of Section 1172.6 Procedure

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)  Relevant here, the bill amended the natural and probable consequences doctrine by requiring that a principal act with malice aforethought before he or she may be convicted of murder or attempted murder.[4]  (§ 188, subd. (a)(3); accord, *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)  Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)

Senate Bill No. 1437 also added former section 1170.95, now renumbered as section 1172.6, which provides a procedure for persons convicted of "attempted murder under the natural and probable consequences doctrine" to seek vacatur of the conviction and resentencing.  (§ 1172.6, subd. (a).)  "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] [s]ection 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill [No.] 1437 (§ 1172.6, subd. (a)(3))."  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  The sentencing court must then

---

[4] Although the bill also amended the felony-murder rule (§ 189, subds. (e), (f)), the felony-murder rule is not at issue in this appeal.

determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subds. (a)–(c); accord, *Strong*, at p. 708.)

Our Supreme Court has emphasized that "the prima facie inquiry . . . is limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)  "[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.)  The court may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " at the prima facie stage.  (*Ibid*.)  "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.)  "Consequently, '[i]f the petition and record in the case *establish conclusively* that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*), italics added.)

Our Supreme Court has made clear that a trial court may rely on the record of conviction in determining whether a prima facie showing is made.  (*Lewis*, *supra*, 11 Cal.5th at p. 970.)  The record of conviction "allow[s] the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.)  However, not all documents comprising the record of conviction are sufficient to rebut a petitioner's factual allegations.  For example, while an appellate opinion is part of the record of conviction, the probative value of such opinion on the prima facie inquiry is "case

7.

specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' "[5] (*Lewis*, at p. 972.)

As stated, " '[i]f the petition and record in the case *establish conclusively* that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel*, *supra*, 15 Cal.5th at p. 450, italics added.) However, if the trial court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder [or attempted murder] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1172.6, subds. (c), (d)(1).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

We review the court's prima facie inquiry de novo. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

## II. The Information Does Not Establish Petitioner's Resentencing Ineligibility

The People contend the information establishes that petitioner is ineligible for resentencing as a matter of law. In this regard, the People point out that petitioner was charged with premeditated attempted murder, with an enhancement for personally and intentionally discharging a firearm and proximately causing great bodily injury (§ 12022.53, subd. (d)). Because no other codefendants were charged and no target

---

[5] Additionally, since *Lewis* was decided, the Legislature has statutorily limited the portions of an appellate opinion that may be considered in evaluating a petitioner's eligibility for resentencing. (§ 1172.6, subd. (d)(3).)

crimes or underlying felonies were alleged, the People contend the information establishes "the People's only theory was that [petitioner] was the sole perpetrator and assailant." Thus, the People contend "there was no other reasonable basis for [petitioner's] no contest plea," other than him being the "sole and actual perpetrator of the attempted murder." We disagree that the information, standing alone, establishes petitioner's ineligibility for resentencing as a matter of law.

As an initial matter, we note that petitioner did not enter a plea to premeditated attempted murder, but rather to attempted murder without premeditation. Nor did he admit the firearm enhancement alleged in the information, but rather a lesser enhancement for personal use of a firearm (§ 12022.53, subd. (b)), and a separate great bodily injury enhancement (§ 12022.7). A petition for resentencing may be denied where the "the record conclusively establishes every element of the [homicide] offense" under a valid theory. (*Curiel*, *supra*, 15 Cal.5th at p. 463.) Here, however, the People's initial allegations were unproven and unadmitted. The allegations do not conclusively establish that petitioner admitted or was otherwise found to have committed every element of the offense of attempted murder under a valid theory.

Additionally, the People's argument fails on the merits. Prior to the effective date of Senate Bill No. 1437, the natural and probable consequences doctrine was an available theory of both premeditated and unpremeditated attempted murder. (See *People v. Favor* (2012) 54 Cal.4th 868, 879–880.) The People were not required to separately plead an aiding and abetting, felony murder, or natural and probable consequences theory. (*People v. Nakahara* (2003) 30 Cal.4th 705, 712 [felony murder]; see *Gentile*, *supra*, 10 Cal.5th at p. 843 [aiding and abetting not a separate offense]; *People v. Garrison* (1989) 47 Cal.3d 746, 776, fn. 12 [accusatory pleading that charges the defendant "as a principal is sufficient to support a conviction as an aider or abettor"].) Furthermore, a proven section 12022.53, subdivision (d) enhancement does not necessarily establish the defendant acted with malice aforethought "[b]ecause an enhancement under section 12022.53,

subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life." (*People v. Offley* (2020) 48 Cal.App.5th 588, 598.) Because the information does not establish any underlying facts regarding petitioner's role in the offense, the enhancement allegation does not establish petitioner's ineligibility for resentencing as a matter of law.

Finally, we reject the People's argument that petitioner's plea to attempted murder establishes he acted with intent to kill. As we have stated, imputed malice was a valid theory of attempted murder at the time petitioner entered his plea. Petitioner's generic plea to attempted murder does not establish he was convicted under any particular theory of attempted murder, let alone a theory that remains valid after the effective date of Senate Bill No. 1437. (See *People v. Rivera* (2021) 62 Cal.App.5th 217, 233 (*Rivera*).)

Accordingly, neither the information nor petitioner's plea establish his ineligibility for resentencing as a matter of law.

## III. The Preliminary Hearing Transcript Does Not Establish Petitioner's Resentencing Ineligibility

Petitioner contends the court engaged in premature judicial factfinding when it relied on the transcripts from the preliminary hearing and his change of plea to determine he was the actual perpetrator of the attempted murder. The People argue the trial court did not engage in improper factfinding because the preliminary hearing transcript and additional factual basis offered by the prosecutor during the change of plea colloquy "made it clear that the prosecutor's only theory of liability was that [petitioner] was the sole perpetrator and . . . personally shot the victim." Meanwhile, petitioner presented no contrary evidence or argument for the court to weigh.

For reasons we explain, we agree that the court engaged in premature judicial factfinding based on the preliminary hearing transcript and change of plea colloquy. Neither transcript "conclusively establish[es]" the theory of guilt under which petitioner was convicted (*Curiel*, *supra*, 15 Cal.5th at p. 471), and petitioner made no admissions in

relation to his plea to establish he was the actual perpetrator of the attempted murder. Accordingly, the transcripts were insufficient to rebut petitioner's allegations of resentencing eligibility.

## A. Existing case law

There is an existing body of case law on this subject that is somewhat in tension. We begin by examining this case law in detail.

In *People v. Flores* (2022) 76 Cal.App.5th 974 (*Flores*), we summarized the early evolution of the relevant case law as follows:

> "In *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166 (*Nguyen*), the court found the preliminary hearing transcript dispositive. There, Nguyen pled guilty to second degree murder and stipulated to the preliminary hearing transcript and police reports as the factual basis for the plea. [Citation.] Nguyen subsequently petitioned for resentencing pursuant to section [1172.6]. The People opposed the petition on the ground ' "[s]ufficient evidence presented at the preliminary hearing" ' demonstrated Nguyen acted with malice aforethought as an aider and abettor to the murder. [Citation.] The People further argued that they had not argued the applicability of the natural and probable consequences doctrine and the record did not support a finding the court considered that theory in holding Nguyen to answer. [Citation.] The trial court agreed with the People's arguments and denied the petition. [Citation.] The Court of Appeal affirmed, noting: 'If [the petitioner] had gone to trial, and the parties had presented no argument and the trial court had given no instructions regarding felony murder or murder under a natural and probable consequences theory, there is no question [the petitioner] would be unable to make a prima facie showing that he is entitled to relief under section [1172.6]. [Citation.] Nguyen's murder conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial, as the transcripts from the preliminary and plea hearings demonstrate Nguyen was convicted of second degree murder as a direct aider and abettor.' [Citation.]

> "In *Rivera*, the court declined to follow *Nguyen*. [Citation.] Rivera pled no contest to second degree murder and stipulated to a grand jury transcript as the factual basis of the plea. . . . [¶] The [Court of Appeal] determined the transcript was not dispositive, noting: '[T]here is no basis on which to infer that Rivera admitted to acting with actual malice. His

stipulation to the grand jury transcript as the factual basis for his plea does not establish such an admission.  Under section 1192.5, a trial court taking a plea must make "an inquiry . . . of the defendant to satisfy itself . . . that there is a factual basis for the plea."  "The factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges.  [Citation.]  It is not necessary for the trial court to interrogate the defendant about possible defenses to the charged crime [citation], nor does the trial court have to be convinced of [the] defendant's guilt."  [Citation.]  In addition, "[a] defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document."  [Citation.]  Thus, absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not "constitute[] a binding admission for all purposes."  [Citations.]  For our purposes, this means that Rivera did not admit to the truth of any of the evidence presented to the grand jury, and that evidence therefore cannot be used to demonstrate that he admitted to acting with actual malice.  Thus, the trial court properly declined to rely on this evidence in making its ruling.'  [Citation.]

"In specifically declining to follow *Nguyen*, the [*Rivera*] court noted, 'The fact that a petitioner was not "convicted of felony murder or murder under a natural and probable consequences theory" [citation] at trial may be conclusively determined if, for example, the jury did not receive instructions on either theory.'  [Citation.]  However, the record of conviction involving a plea 'will generally lack any comparable assurance of the basis for the conviction.'  [Citation.]  This is because a magistrate or grand jury is not required to be convinced beyond a reasonable doubt that the defendant committed every element of the offense, but rather ' " ' "must be convinced only of such a state of facts as would lead a [person] of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused.  [Citations.]  In other words, 'Evidence that will justify a prosecution need not be sufficient to support a conviction.' " ' " '  [Citation.]  Furthermore, the instructions to a grand jury 'do not fix the theories on which a case may be prosecuted or establish the basis for a postindictment plea.  A prosecutor has "no duty to instruct the grand jury sua sponte on lesser included offenses" because "it 'is not the province of the [g]rand [j]ury to determine the degree of murder.' " . . . Thus, a grand jury's return of an indictment after being instructed on only certain theories of murder does not reflect a determination that those are the only viable theories available, much less that murder has been proven under them beyond a reasonable doubt.'  [Citation.]  Finally, the court noted Rivera had filed a facially sufficient petition and offered a theory under which the evidence presented to the grand jury was consistent with his guilt

12.

of murder under a natural and probable consequences theory, thereby creating a factual dispute that could not be resolved at the prima facie stage. [Citation.]" (*Flores*, *supra*, 76 Cal.App.5th at pp. 989–991.)

We then considered and applied these principles to the facts presented in *Flores*. There, the petitioner pled no contest, pursuant to *People v. West* (1970) 3 Cal.3d 595, to second degree murder. (*Flores*, *supra*, 76 Cal.App.5th at p. 982.) The parties stipulated that the police reports and preliminary hearing transcript provided a factual basis for the plea. (*Ibid.*) Petitioner had given varying statements to law enforcement regarding his involvement in the murder, and law enforcement testified to these statements at the preliminary hearing. (*Id.* at pp. 979–981.) Notably, in one statement, the "petitioner stated that [his codefendant] shot [the victim] multiple times and beat [the victim] around the head and upper body, after which petitioner may have accidentally run over [the victim] twice while leaving the scene." (*Id.* at p. 991.)

A panel of this court concluded that the preliminary hearing transcript was part of the record of conviction that could be considered at the prima facie stage (*Flores*, *supra*, 76 Cal.App.5th at p. 989, fn. 11), but that the transcript did not establish the petitioner's ineligibility for resentencing as a matter of law: "Petitioner did not admit the truth of this testimony and his stipulation that the transcript provided a factual basis for the plea is not a ' "binding admission for all purposes." ' [Citation.] Even if it was, this testimony, standing alone, does not conclusively establish as a matter of law that petitioner was the actual killer, acted with intent to kill or actual malice, or was a major participant in an underlying crime who acted with reckless indifference to human life. It does not exclude the possibility that petitioner was, or could have been, convicted under the imputed malice theories eliminated by Senate Bill No. 1437 (2017–2018 Reg. Sess.). To find petitioner ineligible for resentencing on this record would require judicial factfinding, which is impermissible at the prima facie stage." (*Id.* at pp. 991–992.) This court emphasized the limited nature of the section 1172.6 prima facie review, which permits denial of the petition only where "the record of conviction contains facts *conclusively*

13.

refuting the allegations in the petition" and establishes, as a matter of law, that the petitioner was convicted under a valid theory. (*Flores*, at p. 991.)

More recently, in *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670 (*Patton*), the Court of Appeal relied on the preliminary hearing transcript to affirm denial of a petition for resentencing at the prima facie stage. There, the petitioner had entered a plea of no contest to attempted murder.[6] (*Patton*, at p. 653.) At the preliminary hearing, law enforcement testified that surveillance video showed a man they knew to be the petitioner walking up to the victim and shooting him. (*Id.* at pp. 652–653, 657.) Based on this testimony, the trial court found substantial evidence supported a finding that petitioner was the shooter, and substantial evidence therefore supported the charge of attempted murder. (*Id.* at pp. 654–655; but see § 1172.6, subd. (d)(3) ["A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."].)

The Court of Appeal agreed that the preliminary hearing transcript defeated the petitioner's prima facie showing. The court noted that the testifying law enforcement officers had been subject to cross-examination and the petitioner had not offered any theory or facts to support a contention that he was an accomplice, rather than the sole perpetrator. (*Patton*, *supra*, 89 Cal.App.5th at p. 657, review granted.) Thus, the court described the petitioner "[a]s the sole and actual perpetrator of the attempted murder." (*Ibid.*) The court determined the trial court had not engaged in improper factfinding

---

[6] The *Patton* opinion does not make clear whether the petitioner stipulated to the preliminary hearing transcript as a factual basis for the plea. (See *People v. Davenport* (2021) 71 Cal.App.5th 476, 482 [trial court erred in considering facts from the preliminary hearing transcript because the petitioner did not stipulate to the transcript as a factual basis for his plea]; but see *People v. Pickett* (2023) 93 Cal.App.5th 982, 992–993, review granted Oct. 11, 2023, S281643 (*Pickett*) [disagreeing with *Davenport* on this point and holding that stipulation to preliminary hearing transcript as factual basis is not necessary before the transcript may be considered in the § 1172.6 prima facie inquiry].)

because the sworn law enforcement testimony was uncontroverted. (*Id.* at p. 658.) The court did not discuss or cite *Nguyen*, *Rivera*, or *Flores*. Our Supreme Court has granted review in *Patton* to determine whether the trial court engaged in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny the petition at the prima facie stage. (*People v. Patton* (June 28, 2023, S279670).)

Meanwhile, two more recent cases have reached the same result as *Patton* while employing a slightly different analysis. In *Pickett*, *supra*, 93 Cal.App.5th 982, review granted, the petitioner pled guilty to second degree murder. Witnesses at the preliminary hearing described the petitioner talking with the victim and then firing a gun in the air. (*Id.* at p. 986.) After that, one or two more shots were heard and the victim was observed lying on the ground with an apparent gunshot wound from which he later died. (*Ibid.*) "There was no evidence suggesting that anyone other than [the petitioner] was involved in [the victim's] death." (*Ibid.*) The available record did not indicate whether the petitioner had stipulated to the preliminary hearing as providing a factual basis for the plea. (*Id.* at p. 986, fn. 2.)

The Court of Appeal held the record established the petitioner had not made a prima facie showing for relief. (*Pickett*, *supra*, 93 Cal.App.5th at p. 989, review granted.) The court first observed that the petitioner had filed a facially sufficient petition, but had not alleged any facts concerning the killing, and did not deny he was the actual killer, assert another person fired the fatal shot, or allege he acted without intent to kill. (*Ibid.*) The court also observed that the preliminary hearing transcript contained "nothing to suggest that any other person was involved in the incident." (*Id.* at p. 990.) Thus, "[t]he inference that [the petitioner] acted alone and was the actual killer [was] uncontradicted and compelling." (*Ibid.*) In response, the petitioner "offered no evidence or argument that might have raised a factual issue as to his involvement in [the] death." (*Ibid.*) Because the petitioner offered no evidence, the Court of Appeal concluded that reliance on the preliminary hearing transcript did not require the court to engage in factfinding or

15.

weighing of the evidence.  (*Ibid.*)  The court explained:  "Under these circumstances, where the [petitioner] alleges no facts concerning the murder to which he pleaded guilty, the People introduce without objection uncontroverted evidence from the preliminary hearing transcript showing that the [petitioner] acted alone in killing the victim, and the [petitioner] does not put forth, by way of briefing or oral argument, any factual or legal theory in support of his petition, the [petitioner] has failed to make a prima facie showing for relief under section 1172.6."  (*Ibid.*)

Finally, in *People v. Mares* (2024) 99 Cal.App.5th 1158, 1161, review granted May 1, 2024, S284232 (*Mares*), the petitioner entered a guilty plea to voluntary manslaughter.  The factual basis for the plea was not specified.  (*Id.* at p. 1163.)  At the preliminary hearing, police had recounted the petitioner's admissions to stabbing the victim and acting alone.  (*Id.* at pp. 1161–1162.)  The Court of Appeal noted that the petitioner had filed a facially sufficient petition but had "offer[ed] nothing more than [a] conclusory assertion" that he " 'could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019.' "  (*Id.* at p. 1165.)  The court determined this conclusory assertion was "refuted by uncontradicted facts in the record."  (*Id.* at p. 1166.)  Those facts included that the petitioner "pled guilty while the People were pursuing a murder conviction based only on a theory that he was the actual killer."  (*Ibid*.)  In contrast, to meet the prima facie inquiry, the petitioner would have been required to assert that another person was the actual killer, and that he "would have defended this case on the theory that he was guilty of only the lesser crime that he helped the killer commit, an argument unavailable to him at the time."  (*Id.* at p. 1167.)  The court determined it "[did] not matter whether any fact offered at the [preliminary] hearing was correct" (*ibid*.), because "[n]o facts support[ed] a theory that [the petitioner] was an accomplice to a murder committed by some other person" (*id.* at p. 1168).

16.

The court in *Mares* distinguished its holding from that in *Patton* and *Pickett*. According to the *Mares* court, "*Patton* and *Pickett* hold that a court may conclude a guilty-plea[7] defendant *was* the actual killer from an uncontradicted preliminary hearing record, precluding a section 1172.6 prima facie case." (*Mares*, *supra*, 99 Cal.App.5th at p. 1174, review granted.)  However, the *Mares* court emphasized that its approach "clarifies that no factfinding is needed to reject the petition, as a court need not find any individual fact in the preliminary hearing was true, only that the claim that Senate Bill [No.] 1437 could matter is unsupported by the record." (*Ibid.*)  According to the court, its "approach also leaves open the possibility (unlikely on most sets of facts) that a petitioner . . . could replace his conclusory assertion with a declaration creating a factual issue by explaining there was another killer whom he assisted in a crime from which the murder resulted." (*Ibid.*)

B.    **Nature of the prima facie inquiry**

We must begin our analysis with the section 1172.6 prima facie framework described by our Supreme Court, which we are bound to apply.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  As stated above, at the prima facie stage " ' " 'the court takes [the] petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.' " [Citation.] "[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing." [Citation.]  "However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.' " ' [Citation.]  Consequently, '[i]f the petition and record in the case

---

**7** *Patton* involved a no contest plea, rather than a guilty plea. (*Patton*, *supra*, 89 Cal.App.5th at p. 653, review granted.)

*establish conclusively* that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel*, *supra*, 15 Cal.5th at p. 460, italics added; accord, *Lewis*, *supra*, at p. 971.)

Section 1172.6 applies equally to convictions obtained by plea or by trial. (§ 1172.6, subd. (a)(2).) To date, all our Supreme Court's cases interpreting the prima facie inquiry have arisen in cases where the conviction was obtained following a jury trial. (*Curiel*, *supra*, 15 Cal.5th at p. 440; *Strong*, *supra*, 13 Cal.5th at p. 703; *Lewis*, *supra*, 11 Cal.5th at p. 958.) However, nothing in our Supreme Court's case law suggests that the foregoing framework is inapplicable to convictions obtained by plea. Rather, the dispute in this case centers on the showing required to " '*establish conclusively* that the [petitioner] is ineligible for relief' " (*Curiel*, *supra*, 15 Cal.5th at p. 460, italics added) in cases where the conviction was obtained by way of a plea.

Most recently, in *Curiel*, our Supreme Court emphasized that a petitioner who alleges that he or she could not currently be convicted of a homicide offense "because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)) puts at issue all elements of the offense under a valid theory. (*Curiel*, *supra*, 15 Cal.5th at p. 462.) The court then stated that such allegation by the petitioner is not refuted by the record "unless the record conclusively establishes every element of the offense" under a valid theory. (*Id*. at p. 463; see *id.* at p. 465.) In the context of a jury trial, this requirement is satisfied if the record establishes the jury necessarily found every element of the homicide or attempted homicide offense under a valid theory. (*Id*. at p. 465.) Indeed, our Supreme Court's case law leaves no doubt that jury findings are binding on a section 1172.6 petitioner[8] and may be sufficient to conclusively refute the petition's allegations. (*Curiel*, at p. 463; *Strong*, *supra*, 13 Cal.5th at pp. 710, 714–715.)

---

[8] Both *Curiel* and *Strong* relied on the principles of issue preclusion to hold that prior jury findings are binding on a section 1172.6 petitioner, although both cases stopped short of holding that the doctrine of issue preclusion applies wholesale to section 1172.6

However, the high court did not limit the requirement that "the record conclusively establish[] every element of the offense" to convictions obtained following a trial.[9]

---

proceedings. (*Curiel*, *supra*, 15 Cal.5th at p. 451; *Strong*, *supra*,13 Cal.5th at pp. 715–718.) *Curiel* held that the "contours" of the doctrine of issue preclusion are "informative" in the section 1172.6 context. (*Curiel*, at p. 451.) *Strong* relied on these "background principles for guidance." (*Strong*, at p. 715.) Generally, principles of issue preclusion do not apply to a judgment based on a plea of guilty or nolo contendere. (*Mares*, *supra*, 99 Cal.App.5th at p. 1172, review granted ["In cases like this one that involve a guilty plea, issue preclusion *could not* apply."]; *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1528 ["[A] judgment based on a guilty plea is not entitled to collateral estoppel effect."]; *People v. Camp* (1970) 10 Cal.App.3d 651, 653–654 ["The public policy reasons for the rule excepting a conviction upon a plea of guilty from the doctrine of collateral estoppel by judgment apply with equal force to its application in a subsequent criminal case as to its application in a subsequent civil case."]; cf. *Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605 ["A plea of guilty is admissible in a subsequent civil action on the independent ground that it is an admission. It would not serve the policy underlying collateral estoppel, however, to make such a plea conclusive."].)

[9] The dissent suggests *Curiel* is limited to its facts and thus has no application in cases involving a plea, or in cases where "bare petition allegations are wholly contradicted by a record of conviction showing direct perpetration of a crime." (Dis. opn., *post*, at p. 21; see *id.* at pp. 5, 8, 12, 20.) But, *Curiel* sets forth the test for determining *whether* "bare petition allegations" (dis. opn., *post*, at p. 21) are conclusively refuted by the record of conviction. (*Curiel*, *supra*, 15 Cal.5th at p. 463). We therefore disagree with the dissent's seemingly circular suggestion that the test for determining whether the record refutes the petitioner's allegations does not apply in cases where the record refutes the petitioner's allegations, or that this test for determining whether the record refutes resentencing eligibility does not apply to someone who is ineligible.

We acknowledge the high court's holding regarding the specific inferences that could be drawn from the jury instructions in *Curiel* was limited to the facts of that case. (*Curiel*, *supra*, 15 Cal.5th at p. 471 ["Finally, we note that our holding today does not necessarily apply to other cases where the jury found intent to kill, or even other cases where the jury found true the gang-murder special circumstance. The jury instructions in other cases might be materially different, and they might therefore have required different factual findings by the jury. We hold only that under the jury instructions here, the findings the jury must have made are insufficient to conclusively establish that Curiel is liable for murder under current law."].) However, the high court's discussion of the applicable law was not so limited, and nothing in *Curiel* suggests the court would apply a different test to a different set of facts.

19.

(*Curiel*, *supra*, 15 Cal.5th at p. 463.) Notably, the high court derived this requirement from Senate Bill No. 1437 itself: "[A]fter the enactment of Senate Bill [No.] 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought. [Citation.] It is an invalid theory. Murder liability requires a different, valid theory, such as direct aiding and abetting. [Citation.] And it requires a different, valid theory *because of* the changes to section 188 in Senate Bill [No.] 1437. It was those changes that persuaded this court that the doctrine of natural and probable consequences could no longer support murder liability, with or without malice. [Citation.] Consequently, a petitioner who alleges that he or she could not currently be convicted of a homicide offense 'because of changes to Section 188 or 189 made effective January 1, 2019' (§ 1172.6, subd. (a)(3)) puts at issue all elements of the offense under a valid theory." (*Curiel*, *supra*, at p. 462.)

We acknowledge the high court has yet to elaborate on how the record of conviction may conclusively establish every element of the offense under a valid theory in the context of a plea. However, the court's case law makes clear that a section 1172.6 petition may be denied at the prima facie stage only where the record " '*establish[es] conclusively* that the [petitioner] is ineligible for relief' " (*Curiel*, *supra*, 15 Cal.5th at p. 460, italics added), which showing is not made "unless the record conclusively establishes every element of the offense" under a valid theory (*id*. at p. 463). (See *id.* at p. 465.)

### C. The preliminary hearing transcript does not conclusively establish petitioner was convicted under a valid theory

As we explain, the preliminary hearing transcript does not conclusively establish that petitioner was convicted of attempted murder under a valid theory, i.e., as a direct perpetrator.[10]

---

[10] The dissent does not dispute that the preliminary hearing transcript is "not conclusive within the meaning of *Curiel*." (Dis. opn., *post*, at p. 20, fn. 16.)

The primary purpose of a preliminary hearing is to establish whether there is probable cause to believe a defendant has committed a felony. (§ 866, subd. (b).) The defendant must be held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty." (§ 872, subd. (a).) The phrase "sufficient cause" (§ 872, subd. (a)) " 'is generally equivalent to "reasonable and probable cause" which has been defined as such a state of facts as would lead a [person] of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' [Citations.] Probable cause 'signifies a level of proof below that of proof beyond a reasonable doubt, or even proof by a preponderance of the evidence.' " (*People v. Superior Court (Mendez)* (2022) 86 Cal.App.5th 268, 276.) At the preliminary hearing stage, the court "lacks authority to determine the guilt or innocence of the defendant." (*People v. Wallace* (2004) 33 Cal.4th 738, 749.)

At the preliminary hearing, the court may weigh the evidence and assess witness credibility, but it may not reject the prosecution's evidence "unless the evidence is ' "inherently implausible, the witnesses [have been] conclusively impeached, or the demeanor of the witnesses [is] so poor that no reasonable person would find them credible." ' " (*People v. Superior Court (Mendez)*, *supra*, 86 Cal.App.5th at p. 276.) Thus, the preliminary hearing generally offers the defense little incentive to present contrary evidence. Moreover, at the preliminary hearing, the defense is limited to calling witnesses who, "if believed, would be reasonably likely to establish an affirmative defense, negate an element of a crime charged, or impeach the testimony of a prosecution witness or the statement of a declarant testified to by a prosecution witness."[11] (§ 866, subd. (a).)

---

[11] We also note that, at the preliminary hearing, the People are permitted to introduce hearsay testimony through law enforcement officers, which would be inadmissible at trial. (§ 872, subd. (b).) Although not at issue in the instant case, such

21.

Notably, the prosecution's trial strategy is not limited to the evidence presented at the preliminary hearing. Rather, the prosecution may discover and proffer additional proof when the case proceeds to trial. (*People v. Wallace*, *supra*, 33 Cal.4th at p. 749.)

As the foregoing makes clear, the preliminary hearing transcript does not conclusively establish a defendant's guilt, let alone any particular theory of guilt. At most, the transcript and the court's holding order establish there is probable cause to believe a defendant committed the charged offense under at least one of the theories presented by the prosecution. However, the preliminary hearing evidence does not limit the prosecution's trial strategy. Even where the preliminary hearing evidence suggests the defendant is the actual perpetrator, an information containing a generic charge of murder or attempted murder would still permit the prosecution to proceed at trial under a felony murder, natural and probable consequences, or other imputed malice theory eliminated by Senate Bill No. 1437.

In the instant case, the evidence presented at the preliminary hearing provided probable cause to believe petitioner had committed attempted murder as the actual perpetrator of that offense. However, the preliminary hearing evidence does not conclusively establish that petitioner committed the offense in this manner. Because the preliminary hearing evidence does not conclusively establish the elements of attempted murder under a valid theory, it is insufficient to rebut petitioner's allegation that he could not presently be convicted of attempted murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3); accord, *Curiel*, *supra*, 15 Cal.5th at p. 462.)

---

testimony is likewise inadmissible to determine a petitioner's eligibility for resentencing pursuant to section 1172.6. (See § 1172.6, subd. (d)(3); *Flores*, *supra*, 76 Cal.App.5th at p. 988 ["If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage."].)

This is true, even where defense counsel has stipulated to the preliminary hearing transcript as providing a factual basis for the plea. Section 1192.5 requires a trial court, upon approval of a conditional plea of guilty or nolo contendere, to "cause an inquiry to be made of the defendant to satisfy itself . . . that there is a factual basis for the plea." (§ 1192.5, subd. (c).) The purpose of this requirement is prophylactic: it " ' "protect[s] against the situation where the defendant, although he realizes what he has done, is not sufficiently skilled in law to recognize that his acts do not constitute the offense with which he is charged." ' " (*People v. Palmer* (2013) 58 Cal.4th 110, 112; see *id.* at p. 116.)

It is well settled that a stipulation to a factual basis for a plea is not "a binding admission for all purposes." (*People v. French* (2008) 43 Cal.4th 36, 52.) Moreover, "[a] defendant is not required to personally admit the truth of the factual basis of the plea." (*Id.* at p. 50.) "Courts have consistently differentiated between an admission that a document or recitation contains a factual basis for a plea and an admission that statements in that document or recitation are true." (*People v. Hiller* (2023) 91 Cal.App.5th 335, 349.) Indeed, our Supreme Court has held that stipulation to a factual basis is distinct from an admission of the truth of the facts recited as the factual basis. (*French*, at p. 51.) Accordingly, stipulation to a factual basis does not conclusively establish the nature of the conduct underlying a plea.

We disagree with the decisions in *Pickett* and *Mares*, to the extent they rely on *People v. Reed* (1996) 13 Cal.4th 217 (*Reed*), for the proposition that a preliminary hearing transcript is conclusive of the theory under which a petitioner was convicted because it "reliably reflect[s] the facts of the offense for which the defendant was convicted." (*Id.* at p. 223; see *Mares*, *supra*, 99 Cal.App.5th at p. 1167, review granted; *Pickett*, *supra*, 93 Cal.App.5th at p. 992, review granted.) The People likewise rely on *Reed* to support their argument. We find this reliance on *Reed* misplaced for several reasons. Indeed, when considered in context, *Reed* is contrary to the holdings in *Pickett* and *Mares*, and likewise contrary to the People's argument.

23.

The defendant in *Reed* was alleged to have committed a prior "serious felony" within the meaning of section 667, subdivision (a) and section 1192.7, subdivision (c). (*Reed*, *supra*, 13 Cal.4th at p. 220.) This allegation was based on the defendant's prior guilty plea to "assault with a deadly weapon or by means of force likely to produce great bodily injury." (*Ibid*.) In a bifurcated jury trial, the prosecution presented evidence, including a preliminary hearing transcript, to show the defendant had personally used a dangerous or deadly weapon in the prior assault, the use of which would cause the offense to qualify as a serious felony. (*Id.* at pp. 220–221.) Based on this and other evidence, the jury found the defendant previously had been convicted of assault with a deadly weapon and the court imposed the sentencing enhancement for the prior serious felony pursuant to section 667, subdivision (a). (*Reed*, at p. 221.)

On appeal, the defendant argued the preliminary hearing transcript was not part of the record of conviction as required for its admission under *People v. Guerrero* (1988) 44 Cal.3d 343. (*Reed*, *supra*, 13 Cal.4th at p. 223.) At that time, *Guerrero* permitted the trier of fact on a prior conviction allegation to "look to the entire record of conviction to determine the substance of the prior conviction." (*Reed*, at p. 223, italics omitted.) Ultimately, the high court determined that the procedural protections inherent in the preliminary hearing ensured that the transcript "reliably reflect[ed] the facts of the offense for which the defendant was convicted." (*Ibid*.) Thus, the transcript met the admissibility requirements of *Guerrero*. In other words, *Reed* held that the transcript was sufficiently reliable to be considered *by the trier of fact.*

*Reed* did not hold that the preliminary hearing transcript was so factually reliable as to be *conclusive* of the nature of the prior conviction. To the contrary, in examining the defendant's hearsay objections to the same transcript, the court noted the transcript *did not demonstrate* "the meaning or content of [the] defendant's guilty plea," particularly given that the defendant was not asked to and did not "admit any particular facts stated in the preliminary hearing . . . , other than those facts necessary to the . . .

24.

charge itself." (*Reed, supra*, 13 Cal.4th at p. 224.) As the court aptly stated, " '[The defendant] pled guilty to an information, not to a preliminary hearing transcript.' " (*Ibid.*)

Our holding is consistent with *Reed*. The preliminary hearing transcript is part of the record of conviction. But, as our Supreme Court has cautioned, the probative value of particular documents contained in the record of conviction is "case specific." (*Lewis, supra*, 11 Cal.5th at p. 972.) The high court has acknowledged that even documents comprising the record of conviction " 'might not supply all answers.' " (*Ibid*.) Here, the preliminary hearing transcript does not " 'supply all answers' " for the reasons stated above.

We also find reliance on *Reed* misplaced for an additional reason. The law regarding prior conviction allegations has changed substantially since *Reed* was decided, and those changes are relevant to the question before us. Following *Reed*, the United States Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" must be found by a jury, except that "the fact of a prior conviction" may be found by the court. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490; see *In re Milton* (2022) 13 Cal.5th 893, 901.) Thus, "defendants have no right to a jury trial of 'the fact of a prior conviction.' " (*People v. Epps* (2001) 25 Cal.4th 19, 28.) In some circumstances, however, "some fact need[s] to be proved regarding the circumstances of the prior conviction—such as whether a prior burglary was residential— in order to establish that the conviction is a serious felony." (*Ibid.*) Thus, following *Apprendi*, our Supreme Court held: "If the enumeration of the elements of the offense does not resolve the issue, an examination of the record of the earlier criminal proceeding is required in order to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law." (*People v. McGee* (2006) 38 Cal.4th 682, 706.) In conducting this inquiry into "the nature or basis of the defendant's prior conviction," *McGee* limited the

trial court to examination of "the record of the prior criminal proceeding, with a focus on the elements of the offense of which the defendant was convicted." (*Ibid.*, italics omitted.)

However, this holding from *McGee* was somewhat short lived. "Less than a decade later, the United States Supreme Court extended the right to have a jury make factual determinations about the nature of a prior conviction that is used to increase punishment." (*In re Milton*, *supra*, 13 Cal.5th at p. 901, citing *Mathis v. United States* (2016) 579 U.S. 500, and *Descamps v. United States* (2013) 570 U.S. 254.) Under this case law, a jury must make any factual determinations regarding a defendant's underlying conduct at issue with respect to a prior conviction. (*Mathis*, at pp. 508, 511; *Descamps*, at p. 269.)

Soon after these cases were decided, the California Supreme Court revisited *McGee* in *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), which remains the controlling case on this issue. "In *Gallardo*, the prosecution alleged the defendant's prior conviction for aggravated assault under former section 245, subdivision (a)(1) . . . qualified as a strike. [Citation.] The defendant had pleaded guilty to that offense, but her plea did not specify whether she had used a deadly weapon (a serious felony) or force likely to produce great bodily injury (not a serious felony). [Citations.] To resolve this ambiguity, the trial court reviewed a transcript of the victim's preliminary hearing testimony that the defendant used a knife and found, based on that testimony, that the prior conviction qualified as a strike." (*In re Milton*, *supra*, 13 Cal.5th at pp. 902–903.)

Our Supreme Court acknowledged in *Gallardo* that the trial court had complied with *McGee* but concluded that *McGee* was no longer viable in light of *Descamps* and *Mathis*. (*Gallardo*, *supra*, 4 Cal.5th at p. 134.) Now, "a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction. [Citation.] That inquiry

26.

invades the jury's province *by permitting the court to make disputed findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct*.' [Citation.]  The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, *or that the defendant admitted as the factual basis for a guilty plea*"[12]  (*Gallardo*, at p. 136, italics added.)  "[A] sentencing court may identify those facts it is 'sure the jury . . . found' in rendering its guilty verdict, or those facts as to which the defendant waived the right of jury trial in entering a guilty plea." (*Id.* at p. 134.)  "To do more is to engage in 'judicial factfinding that goes far beyond the recognition of a prior conviction.' " (*Ibid*.)

The high court further explained:  "An indictment or jury instructions might help identify what facts a jury necessarily found in the prior proceeding.  [Citation.]  But [the] defendant's preliminary hearing transcript can reveal no such thing.  A sentencing court reviewing that preliminary transcript has no way of knowing whether a jury would have credited the victim's testimony had the case gone to trial.  *And at least in the absence of any pertinent admissions*, the sentencing court can only guess at whether, by pleading guilty . . . [the] defendant was also acknowledging the truth of the testimony." (*Gallardo*, *supra*, 4 Cal.5th at p. 137, italics added.)

Since *Gallardo*, appellate courts have elaborated on the type of "pertinent admissions" that would be sufficient to establish a defendant's underlying conduct. (*People v. Hiller*, *supra*, 91 Cal.App.5th at pp. 349–350.)  At least one court has held that counsel's mere stipulation to a document as providing a factual basis for a defendant's plea does not constitute an admission to the truth of the statements contained therein, and

---

[12] In *Gallardo*, the high court determined that the trial court's reliance on the defendant's preliminary hearing transcript constituted impermissible factfinding because the facts contained in the transcript had not been admitted by the defendant. (*Gallardo*, *supra*, 4 Cal.5th at p. 137.)

thus does not establish a defendant's underlying conduct in a manner permitted by *Gallardo*. (*Ibid.*) Courts finding no *Gallardo* violation have instead relied on direct admissions made personally by the defendant in the context of entering his or her plea. (E.g., *In re Nelson* (2020) 56 Cal.App.5th 114, 126 [recitation of facts in the defendant's signed affidavit, made in conjunction with his plea]; *In re Scott* (2020) 49 Cal.App.5th 1003, 1009–1011, 1019–1020 [admissions made by the defendant during plea colloquy].)

We acknowledge that the holding in *Gallardo* is dictated by Sixth Amendment principles, which have no relevance in the section 1172.6 context. (*People v. Duran* (2022) 84 Cal.App.5th 920, 931 ["[T]he panoply of rights that attach at trial do not apply during a section 1172.6 evidentiary hearing." (italics omitted)].) Nonetheless, *Gallardo* holds that reliance on anything other than facts found by a jury or admitted by the defendant to determine the underlying nature of the offense constitutes judicial factfinding. (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) In the sentencing context, such factfinding is prohibited by the Sixth Amendment. (*Gallardo*, at pp. 134, 136–137.) In the section 1172.6 context, such factfinding is prohibited by our high court's case law interpreting the statute at issue. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) It is of no moment that the source of the prohibition differs – a determination which constitutes factfinding at sentencing does not transform into a conclusive legal determination in a different context. The rationale of *Gallardo* applies equally to the prima facie determination under section 1172.6.

We disagree with the holdings of *Patton*, *Pickett*, and *Mares*, as well of the reasoning of the dissent, that preliminary hearing testimony suggesting a section 1172.6 petitioner was the actual perpetrator of a homicide offense is sufficient to rebut a facially sufficient petition. These cases do not comply with the mandate in *Curiel* that the record of conviction must be conclusive of the petitioner's guilt under a valid theory for the

record to be sufficient to rebut the petitioner's allegations of resentencing eligibility.[13] *Patton* held it was enough that the preliminary hearing testimony regarding the petitioner's role as the actual perpetrator was "uncontroverted." (*Patton*, *supra*, 89 Cal.App.5th at p. 658, review granted.) *Pickett* held it was sufficient that the preliminary hearing testimony regarding the petitioner's role as the sole perpetrator was "uncontradicted and compelling." (*Pickett*, *supra*, 93 Cal.App.5th at p. 990, review granted.) *Mares* held it was sufficient that the preliminary hearing testimony was "uncontradicted," whether or not the testimony was true. (*Mares*, *supra*, 99 Cal.App.5th at p. 1166, review granted; see *id.* at p. 1174.) And, the dissent suggests it is sufficient that the uncontradicted preliminary hearing testimony "affirmatively reflects" the petitioner was prosecuted under a valid, direct perpetrator theory. (Dis. opn., *post*, at p. 25.) Compelling evidence may be sufficient to persuade a trier of fact. At the same time, even uncontroverted, uncontradicted evidence may be disbelieved. Regardless, absent a factual finding or admission regarding the manner in which the offense was committed, even compelling, uncontroverted, and uncontradicted testimony is not *conclusive* of a petitioner's guilt under a specific theory, as required under *Curiel*.

In sum, neither the preliminary hearing transcript nor defense counsel's stipulation to that transcript providing a factual basis for the plea conclusively establishes that petitioner entered a plea to attempted murder under a still-valid theory.[14]

Accordingly, the order denying the petition must be reversed.

---

[13] We note that *Patton* and *Pickett* were decided prior to *Curiel* and thus did not contend with the standard set forth therein.

[14] For the same reason, defense counsel's stipulation to the prosecutor's recitation of the factual basis for the plea does not conclusively establish the theory under which petitioner was convicted.

**D.    Petitioner was not required to provide further facts or argument to meet his prima facie burden**

We also disagree with both *Pickett* and *Mares*, to the extent the courts in those cases opined that a petitioner is required to submit more than a facially sufficient petition to rebut uncontroverted facts presented at a preliminary hearing. (*Mares*, *supra*, 99 Cal.App.5th at pp. 1163, 1165–1167, review granted; *Pickett*, *supra*, 93 Cal.App.5th at p. 989, review granted.) Indeed, both cases suggest that, to meet his or her prima facie burden, a petitioner is required to rebut testimony from the preliminary hearing with other evidence that would raise a factual issue as to the petitioner's role in the offense. (*Mares*, at pp. 1166–1170; *Pickett*, at pp. 987, 990.) The dissent likewise suggests that, where the preliminary hearing transcript reflects only a direct perpetrator theory of liability, a petitioner is required to make an additional, unspecified showing that he or she falls within the provisions of section 1172.6 to proceed beyond the prima facie inquiry. (Dis. opn., *post*, at pp. 13–17, 24.) This suggestion turns the section 1172.6 process on its head.

Again, "the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) As stated, "the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] [s]ection 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill [No.] 1437 (§ 1172.6, subd. (a)(3))." (*Strong*, *supra*, 13 Cal.5th at p. 708.) These factual allegations, if true, are sufficient to entitle the petitioner to relief and necessarily "put[] at issue all elements of the offense under a valid theory." (*Curiel*, *supra*, 15 Cal.5th at p. 462.) Accordingly, a petitioner who has made the factual allegations required by section 1172.6 is entitled to an order to show cause unless readily ascertainable facts from the record conclusively establish the petitioner was convicted under a valid theory. (*Curiel*, *supra*, 15 Cal.5th at

pp. 463, 467; *Lewis*, *supra*, 11 Cal.5th at p. 971.) A preliminary hearing transcript does not conclusively establish a theory of guilt and thus is insufficient to rebut the petitioner's factual allegations, even if the transcript suggests the prosecution pursued only a direct perpetrator theory of murder or attempted murder at the preliminary hearing.

Moreover, at the prima facie stage, the trial court relies on the petition and the record of conviction to determine whether a petitioner has stated a prima facie case based on the nature of the offense of which the petitioner was convicted. (*Strong*, *supra*, 13 Cal.5th at p. 715; *Lewis*, *supra*, 11 Cal.5th at pp. 970–971.) It is not until the evidentiary hearing that section 1172.6 permits the introduction of "new or additional evidence." (§ 1172.6, subd. (d)(3).) Nothing in section 1172.6 permits, let alone requires, a petitioner to submit new or additional evidence at the prima facie stage. And, to the extent *Pickett* and *Mares* suggest a petitioner is required to present some additional argument to raise a factual issue as to his or her role in the offense, we again note that this suggestion is contrary to *Curiel*, which states that a petitioner's bare allegations, phrased in the language of the statute, are sufficient to "put[] at issue all elements of the offense under a valid theory." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

We likewise disagree with the dissent's assertion that Evidence Code section 500 places an additional burden on the petitioner to argue alternative theories of guilt at the prima facie stage. (Dis. opn., *post*, at pp. 5, 13–17, 24.) Evidence Code section 500 provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." Thus, Evidence Code section 500 generally places the burden of proof on the party seeking relief, *except where statutory or decisional law provides otherwise.* (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1154 [noting that Evid. Code, § 500's general rule allocating the burden of proof "does not supersede other, specific, rules established by statute or judicial decision"].) Meanwhile, section 1172.6 places the burden of proof squarely on the

31.

prosecution to prove beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under a valid theory. (§ 1172.6, subd. (d)(3).) Indeed, even at the evidentiary hearing, a petitioner has no obligation to present evidence to support alternative theories of guilt but may – as at trial – choose to argue instead that the prosecution's evidence fails to prove his guilt beyond a reasonable doubt.[15] Thus, Evidence Code section 500 has no applicability here. The dissent's reliance on cases interpreting section 1170.18, under which the petitioner also bears the burden of proof, is likewise misplaced.

We also reject the dissent's assertion that our holding renders the prima facie review meaningless in cases involving a plea. (Dis. opn., *post*, at pp. 3, 23.) It is no more meaningless than in a case like *Curiel*, where the jury expressly found the petitioner harbored the intent to kill. (*Curiel*, *supra*, 15 Cal.5th at p. 440.) Moreover, not all plea records are as bare as that found in the instant case. In a case where the petitioner has made pertinent admissions regarding his role the offense, courts have not hesitated to uphold denial of the petition at the prima facie stage. (E.g., *People v. Saavedra* (2023) 96 Cal.App.5th 444, 448; *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1029–1030; accord, *Rivera*, *supra*, 62 Cal.App.5th at p. 234 ["In some cases, the record may reveal that a defendant admitted *more* than the elements of the offense charged, and such additional admissions may preclude relief under section [1172.6]."].)

We recognize the burden our holding places on trial courts and share the dissent's concern for a process that requires the court to conduct an evidentiary hearing and engage

---

**15** In this regard, we note that the eyewitnesses who testified at the preliminary hearing in the instant case were not without credibility issues. Notably, the victim in this case asserted his right against self-incrimination and, on the advice of counsel, ceased providing testimony after defense counsel suggested he unlawfully possessed a firearm on the date of the offense and the prosecutor declined to provide him immunity for his testimony. Another eyewitness admitted to disposing of the victim's firearm in a bush immediately after the shooting to avoid the victim getting in trouble.

in independent factfinding in a case in which a petitioner's likelihood of success is very low.  However, our Supreme Court has recognized that the prima facie review process may fail to screen out all meritless petitions.  (*Lewis*, *supra*, 11 Cal.5th at p. 968.)  The high court also has determined that the Legislature was aware of the "potential impact [of section 1172.6] on judicial resources" (*ibid*.), and has already "engage[d] in the exact type of cost-benefit assessment and policy determination it was entitled to make" (*id*. at p. 969).  Ultimately, the high court has determined that the statute requires issuance of an order to show cause unless the record conclusively establishes a petitioner's ineligibility for relief.  (*Curiel*, *supra*, 15 Cal.5th at p. 450.)  A likelihood that a petitioner cannot prevail is insufficient to warrant denial of the petition at the prima facie stage.

## DISPOSITION

The order denying the petition is reversed and the matter is remanded with directions to issue an order to show cause and to conduct such further proceedings as necessary pursuant to section 1172.6, subdivision (d).


DETJEN, Acting P. J.

I CONCUR:


SNAUFFER, J.

33.

MEEHAN, J., Dissenting.

I.      **Introduction and Summary**

The disagreement in this case centers on whether the petitioner, who was convicted by plea following a preliminary hearing at which the evidence showed he was the direct perpetrator acting alone, made a prima facie showing and is entitled to an evidentiary hearing, based on his form petition declaring eligibility for relief under Penal Code section 1172.6[1] and application of the rule from *Curiel*. (*People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*).) I agree with the majority that where, as in *Curiel*, the petition and the record of conviction reflect that the petitioner may have been convicted of murder, attempted murder, or manslaughter as an accomplice under a now invalid theory of liability, the petition may not be dismissed at the prima facie stage unless the record conclusively establishes every element of the offense under a valid theory. However, where, as here, the uncontroverted record of conviction by plea reflects only that the petitioner was the direct perpetrator who acted alone, I disagree, one, that the bare petition allegations are sufficient to overcome the record of conviction and state a prima facie case for relief, and, two, that the rule established in *Curiel* applies to this circumstance and precludes dismissal of the petition unless the record conclusively establishes every element of the offense under a valid theory. (*Ibid.*)[2]

---

[1] All further statutory references are to the Penal Code unless otherwise stated. Former section 1170.95 was renumbered to section 1172.6, effective June 30, 2022. (Assem. Bill No. 200 (2021–2022 Reg. Sess.).) I refer to the statute by its current section number.

[2] The majority observes that I "suggest[] it is sufficient that the uncontradicted preliminary hearing transcript testimony 'affirmatively reflects' the petitioner was prosecuted under a valid, direct perpetrator theory." (Maj. opn. *ante*, at p. 29.) As is clear from the majority and dissenting opinions in this case, the only evidence produced at the preliminary hearing is that petitioner was the direct perpetrator of the shooting and he acted alone. This case does not involve a trial court that improperly engaged in factfinding, credibility assessment, or evidence weighing. Rather, the record is devoid of any evidence that petitioner may have been an accomplice potentially convicted under a

I do not interpret *Curiel* as establishing that a form petition is sufficient to overcome a contradictory record of conviction or as establishing a broad rule for determining whether the record refutes the petition allegations at the prima facie stage that is applicable in all cases, irrespective of the case-specific circumstances. Where the petitioner may have been convicted as an accomplice under a now invalid theory and the trial court is attempting to determine whether the petitioner was convicted under a valid or an invalid theory, *Curiel* clearly applies. This assumes, however, that there is some dispute over the matter before the court, which presumably would include plea cases where the record of conviction is silent or ambiguous, in addition to those cases where the record supports the petition allegations or is conflicting on the matter. Cases resolved by plea necessarily have more limited records and will lack the binding and more telling findings made by a trier of fact following a jury or court trial. As a result, where a claim of entitlement to relief is limited to the form petition, and the uncontroverted record of conviction by plea refutes the petition allegations and shows the petitioner was the direct perpetrator acting alone, the consequence of extending *Curiel* results in clearly meritless petitions surviving prima facie review and direct perpetrators routinely proceeding to an evidentiary hearing despite a record of conviction that is devoid of any indication that the petitioner was an accomplice convicted under a now invalid theory of liability. In my view, this is not warranted by the statute's language or purpose, or by California Supreme Court precedent.[3]

now invalid theory of liability, which is the category of defendant intended to benefit from the enactment of section 1172.6. It is in this specific context that I describe the record of conviction as affirmatively reflecting petitioner was convicted as a direct perpetrator, and to the extent there is any suggestion that this phrase contemplates any measure of factfinding, credibility assessment, or evidence weighing by the trial court, or that it sweeps aside ambiguity in the record, the record in this case belies that interpretation.

[3]     This may also raise some difficult questions concerning a trial court's options, depending on case-specific circumstances. As the Court of Appeal pointed out in *Mares*,

The extension of *Curiel* to these circumstances effectively renders the prima facie review meaningless in plea cases such as this and it unnecessarily burdens the trial courts by requiring evidentiary hearings in cases where the petitioner's showing that he is entitled to relief under section 1172.6 is limited to a form petition and that petition is refuted by the record of conviction. The bar at the prima facie stage is low and there are significant constraints on the trial court's ability to rely on the record of conviction, but

which involved a second degree murder conviction, "Here, we do not even have an *assertion* by counsel as to the facts that would support Mares's claim that there was some other killer, and Mares's explanation for his claim that he aided that killer in some other crime that led to the murder. Finding a prima facie case in these circumstances indulges the possibility that Mares cannot assert facts that support the theory that he needs.

"The statutory consequences of a successful petition reveal why it makes sense to require, for a prima facie case, that Mares offer some evidence that he was guilty of murder based on a theory that was valid before Senate Bill [No.] 1437 [(2017–2018 Reg. Sess.)] but is invalid today. If he establishes a prima facie case and prevails at an evidentiary hearing, the statute assumes there is some so-called 'target' felony at issue—a felony, such as robbery, that Mares would have intended other than murder and during which [the victim] was killed by someone else. This is so because, if Mares prevails on his petition, the statute directs his manslaughter conviction 'shall be redesignated as the target offense or underlying felony.' (§ 1172.6, subd. (e).) The only exception is if the target offense also was charged; then he would just be resentenced on the remaining charges, including the target offense. (*Ibid.*)

"This resentencing scheme makes sense for cases involving the abrogated theories of accomplice liability for murder. Those theories would involve Mares as a participant in some target offense that caused a murder committed by another person. Here, there was no different, underlying felony charged along with an accomplice's murder. Mares's assault which killed [the victim] was the only act. Mares pled guilty to manslaughter, but this is a lesser-included offense of murder rather than a 'target' or 'underlying' felony. Nor would it make any sense to have his manslaughter conviction 'redesignated' as manslaughter. The statutory scheme thus suggests the Legislature intended the prima facie showing requirement to work as we apply it today—to eliminate cases that do not involve the abrogated theories. As we interpret the statute, the trial courts may winnow meritless petitions filed in cases that do not involve these murder theories but only an actual killer theory." (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1169–1170, fn. omitted (*Mares*), review granted May 1, 2024, S284232, citing *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)

3.

prima facie review is intended to screen out clearly meritless petitions such as the one filed in this case. (*Lewis, supra*, 11 Cal.5th at pp. 971–972; accord, *Curiel, supra*, 15 Cal.5th at p. 460.) I am unpersuaded the result reached today is what the Legislature intended or what *Curiel* requires.

As discussed below, over the past five years, the law governing murder, attempted murder and manslaughter has been amended by the Legislature to ensure that liability for these crimes is based on the defendant's own actions and subjective mental state rather than imputed based solely on participation in the crime. (Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437); Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775).) To facilitate retroactive relief in postconviction cases, the Legislature provided for a petition process allowing qualifying defendants to seek to have their convictions vacated and to be resentenced. (*People v. Gentile* (2020) 10 Cal.5th 830, 853–854 (*Gentile*); *Curiel, supra*, 15 Cal.5th at pp. 448–449; *Lewis, supra*, 11 Cal.5th at p. 959.) Critically, the changes to the law do not benefit the direct perpetrators of murder, attempted murder and manslaughter, and they are categorically ineligible for relief under section 1172.6's petition process. (*People v. Strong* (2022) 13 Cal.5th 698, 710 (*Strong*).) Consistent with the statute's purpose, the Legislature provided for a prima facie review step, which allows trial courts to weed out those petitions that are clearly meritless. (*Lewis, supra*, at p. 971; accord, *Curiel, supra*, at pp. 463–464.) The bar at the prima facie stage is low, but it is not meaningless and although the trial court may not engage in factfinding, weighing evidence, or assessing witness credibility, the high court's decisions to date have uniformly stated that where the record refutes the petition allegations, the court may make a credibility determination adverse to the petitioner and dismiss the petition.[4] (*Curiel, supra*, at pp. 450, 460, 464; *Strong, supra*, at p. 708; *Lewis, supra*, at

---

[4] In this regard, my view that the trial court properly denied the petition after concluding that the uncontradicted record refuted the petition allegations under section 1172.6, subdivision (a)(3), is in accord with the positions taken in *People v.*

p. 971; see *People v. Delgadillo* (2022) 14 Cal.5th 216, 230, 233 (*Delgadillo*) [the petitioner ineligible for relief where record showed he was actual killer acting alone]; see also *Gentile, supra*, at pp. 859–860 [prima facie showing made where "'probable'" that jury convicted the defendant of murder under now invalid natural and probable consequences theory].)

Dismissal in the circumstance presented here is consistent with and supported by the overall statutory purpose and the intended function of the prima facie review, which is to provide an avenue of relief for those participants in a crime who may have been convicted as accomplices under a now invalid theory while allowing the trial court to weed out clearly unmeritorious petitions, including those filed by direct perpetrators categorically ineligible for relief as a matter of law. Further, permitting dismissal of the petition at the prima facie stage if the uncontroverted record of conviction refutes the bare petition allegations adheres to the general and longstanding rule that the party seeking relief bears the ultimate burden of stating a claim (Evid. Code, § 500), which at the prima facie stage requires the petitioner to show that he or she may have been convicted based on his or her participation in the crime under a now invalid theory of liability (§ 1172.6, subds. (a), (c)). Finally, dismissal in this circumstance does not contravene the admonition that the bar at the prima facie stage is low; it simply ensures that review, while minimal, is nevertheless meaningful by permitting the dismissal of those petitions the record reveals to be clearly meritless. (*Curiel, supra*, 15 Cal.5th at p. 460.)

In the majority's view, the record of conviction in this case—specifically the preliminary hearing transcript at which eyewitnesses identified petitioner as the shooter who acted alone—is insufficient to refute the petition allegations because the record does

---

*Patton* (2023) 89 Cal.App.5th 649, 656–658, (*Patton*), review granted, June 28, 2023, S279670, *People v. Pickett* (2023) 93 Cal.App.5th 982, 990, review granted, October 11, 2023, S281643, and *Mares, supra*, 99 Cal.App.5th at p. 1161, review granted. Post-*Curiel*, *Mares* addressed these issues in a detailed opinion, with which I agree.

not "conclusively establish[] every element of the offense." (*Curiel, supra*, 15 Cal.5th at p. 463.) The majority would expand the holding in *Curiel* beyond the factual parameters of the case to these facts because nothing suggests the rule would not apply and *Curiel* is controlling absent contrary indication. (Maj. opn. *ante*, at p. 19, fn. 9.) However, "It is well settled that language contained in a judicial opinion is '"to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered"'" (*People v. Banks* (1993) 6 Cal.4th 926, 945), and until we receive further clarification on the matter from the California Supreme Court in *Patton*,[5] I would adhere to this well settled principle.

It is my view that the circumstances that informed the rule articulated in *Curiel* are materially distinguishable from those presented here, which were neither considered nor commented upon. As applied to the circumstances in *Curiel*, the test is consistent with the statutory purpose, but, applied here, the test frustrates that purpose. Dismissal of the petition where the record is devoid of *any* indication that petitioner is eligible for relief as an accomplice convicted under a now invalid theory of liability other than contradictory and wholly conclusory form petition allegations is consistent with both section 1172.6 as a matter of statutory interpretation and legislative intent, and with the high court's repeated recognition in this context that "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis, supra*, 11 Cal.5th at p. 971; accord, *Strong, supra*, 13 Cal.5th at p. 708; *Curiel, supra*, 15 Cal.5th at p. 460.) Consequently, I believe that at this juncture, the expansion of the *Curiel* test to all cases at the prima facie step is premature.

---

[5]     The court granted review in *Patton* to consider whether it was error to rely on the preliminary hearing transcript to conclude the petitioner was the direct perpetrator who acted alone and to dismiss the petition. (*Patton, supra*, 89 Cal.App.5th at pp. 656–658, review granted.)

Although the petitioner in *Curiel* may not ultimately be eligible for relief from his conviction, on the face of his record of conviction, it was clear he fell within the category of defendant intended to benefit from the petition process:  he was an accomplice and the jury that convicted him of murder was instructed on valid and now invalid theories of liability.  In that context, where there existed a dispute over whether he was convicted based on his own actions and subjective mental state or based solely on his participation in the crime, his allegation that he could not currently be convicted of murder because of the changes in the law "[was] not refuted by the record unless the record conclusively establishe[d] every element of the offense" under a valid theory.  (*Curiel, supra*, 15 Cal.5th at p. 463.)  This test follows naturally from situations where the court is considering a record of conviction that is either unclear on the matter or shows that the petitioner was possibly convicted as an accomplice under a now invalid theory of liability.  If the petitioner potentially falls within the class of intended beneficiaries under the statute, requiring the petition to proceed to an evidentiary hearing "unless the record conclusively establishes every element of the offense" (*ibid.*) is consistent with the statutory purpose and the limited function of the prima facie stage, which is designed to weed out only those petitions that are clearly meritless and reserve a determination on the others for an evidentiary hearing.

In contrast, where the record is not only devoid of any support for the petition allegations, but it expressly contradicts them by showing that the petitioner is ineligible for relief under the statute because he was the direct perpetrator of the crime, prohibiting the trial court from dismissing the petition at the prima facie stage unless the record conclusively establishes every element of the offense does not advance the statutory goals.  To the contrary, it defeats the purpose of the prima facie review step, and in plea cases such as this, it has the undesirable and unnecessary consequence of flooding trial courts with petitions that would routinely require evidentiary hearings based on nothing more than a form petition, despite the lack of merit apparent from the record of

7.

conviction.[6]  "Many criminal cases are resolved by negotiated plea" (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 992) and these cases often have a limited record (*Mares, supra*, 99 Cal.App.5th at pp. 1172–1173, review granted ["Entering a plea agreement forecloses actual litigation of the issues that would have been tried, as well as a final determination on the merits."]).  While there may be unusual cases where a petitioner admits to every element of the offense when entering a plea, that is generally not what occurs.  Yet the Legislature intended the petition process, including a functional prima facie review step, to apply in all cases.  Thus, in plea cases such as this where the only claim for relief petitioner raises is by bare form petition allegations and those allegations are belied by the record, interpreting *Curiel* to require an evidentiary hearing unless the record conclusively establishes every element of the offense overlooks the limited nature of the record in most plea cases and frustrates the overall statutory purpose and the legislative intent underlying the prima facie review step.  I do not believe such an outcome is consistent with the California Supreme Court's decisions interpreting section 1172.6 or compelled by *Curiel.*

Therefore, I respectfully dissent from the reasoning and disposition in this case.  I would affirm the trial court's dismissal of the petition because the uncontroverted record refutes the facially sufficient but bare petition allegations and reflects that petitioner,

---

[6]     It is not my position that the preliminary hearing transcript, which is the relevant record in this appeal, will be definitive in all cases or even in most cases at the prima facie review step, as the trial court's review is necessarily constrained.  (E.g., § 1172.6, subd. (d)(3); *Lewis, supra*, 11 Cal.5th at p. 972; *People v. Flores* (2022) 76 Cal.App.5th 974, 998 & fn. 9.)  Here, however, three eyewitnesses who were in the car where the shooting occurred identified petitioner as the lone shooter, and there is no contrary evidence in the record.  That there was evidence the men were there to sell drugs to petitioner and one of them was also armed with a gun does not change the calculus because it remains that the only evidence adduced at the preliminary hearing shows petitioner was the shooter acting alone and there is no evidence suggesting he was an accomplice who may have been convicted under a now invalid theory of liability.  (See maj. opn. *ante*, at p. 32, fn. 15.)

acting alone, was the direct perpetrator of the attempted murder. In this circumstance, petitioner is ineligible for relief as a matter of law, and, following the appointment of counsel and briefing, he offered nothing that would undermine this conclusion.

## II.  Background

The preliminary hearing transcript in this case reflects that in May 2010, four men, including the victim, drove to a location for the purpose of selling marijuana. After arriving, one of the men exited the backseat of the vehicle and petitioner then got in. After smelling the marijuana, petitioner pulled out a handgun; made several statements; demanded the vehicle keys; and shot the victim, who was seated next to petitioner in the backseat, in the face. Three of the four men who arrived in the vehicle testified at the preliminary hearing, and all three identified petitioner as the lone actor and shooter.

In 2012, petitioner entered a no contest plea to attempted murder and robbery in the second degree, with enhancements for personal infliction of great bodily injury (GBI) and personal use of a firearm. (§§ 187/664, 211, 12022.7, 12022.53, subd. (b).) He was sentenced to 23 years in prison.

In 2022, proceeding in propria persona, petitioner filed a form petition seeking relief from his attempted murder conviction and resentencing under section 1172.6 based on changes to the law effected by Senate Bills 1437 and 775. Petitioner checked the three requisite boxes and requested counsel as follows:

> "1.     A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and  probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. (Pen. Code, [former] § 1170.95, subd. (a)(1).)

> "2.     I was convicted of **murder**, **attempted murder**, or **manslaughter** following a trial or I accepted a plea offer in lieu of a trial at which I could have been convicted of murder or attempted murder. (Pen. Code, [former] § 1170.95, subd. (a)(2).)

9.

"3.     I could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019.  (Pen. Code, [former] § 1170.95, subd. (a)(3).)  [¶] … [¶]

"4.     Having presented a facially sufficient petition, I request that this Court appoint counsel to represent me.  (Pen. Code, [former] § 1170.95, subd. (b)(1)(C), *People v. Lewis* (2021) 11 Cal.5th 952, 957.)"

In accordance with the statutory procedure, the trial court appointed petitioner counsel, obtained briefing from the parties, and held a hearing.  Based on the record of conviction, which included transcripts of the plea hearing and the preliminary hearing, the court dismissed the petition.  The court noted that petitioner was charged with premeditated attempted murder and pleaded no contest to attempted murder with admissions to personal infliction of GBI and personal use of a firearm.  The court further noted that testimony presented at the preliminary hearing demonstrated that petitioner personally fired a firearm at the victim during a drug deal.  Because the uncontroverted record of conviction reflected that petitioner was the direct perpetrator of the shooting underlying his attempted murder conviction, the court dismissed the petition.

## III.    Analysis

### A.      Section 1172.6 and Prima Facie Review

Senate Bill 1437 "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*Lewis, supra*, 11 Cal.5th at p. 957, citing §§ 188, subd. (a)(3), 189, subd. (e), as amended by Stats. 2018, ch. 1015, §§ 2, 3; accord, *Curiel, supra*, 15 Cal.5th at pp. 448–449; *People v. Reyes* (2023) 14 Cal.5th 981, 990.)  The statutory purpose underlying section 1172.6 is "to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process.  (See Stats. 2018, ch. 1015, § 1, subd. (f).)" (*Lewis, supra*, at p. 971; accord, *Curiel, supra*, at pp. 463–464.)  The statute does not open resentencing to every defendant convicted of murder, attempted murder, or

manslaughter (*Strong, supra*, 13 Cal.5th at p. 715; accord, *Curiel, supra*, at p. 460), and "relief is [categorically] unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.' (Pen. Code, § 189, subd. (e)(3); see § 1172.6, subd. (a).)" (*Strong, supra*, at p. 710.)

In accordance with section 1172.6, after the petitioner files a facially sufficient petition, the trial court shall appoint counsel, if requested (*id.*, subd. (b)(3)); the prosecutor shall file a response (*id.*, subd. (c)); and the petitioner may file a reply (*ibid.*). The court shall then "hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid.*) At this stage, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry …, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This[, as previously stated,] is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis, supra*, 11 Cal.5th at p. 971; accord, *Curiel, supra*, 15 Cal.5th at pp. 463–464.)

"[T]he prima facie inquiry under [section 1172.6,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 978, quoting Cal. Rules of Court, rule 4.551(c)(1).) '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' (*Drayton*, at p. 978, fn. omitted, citing *In re Serrano* (1995) 10 Cal.4th 447, 456.) 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court

11.

is justified in making a credibility determination adverse to the petitioner.'" (*Drayton*, at p. 979, quoting *Serrano*, at p. 456.)" (*Lewis, supra*, 11 Cal.5th at p. 971; accord, *Strong, supra*, 13 Cal.5th at p. 708; *Curiel, supra*, 15 Cal.5th at p. 460.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' (*Drayton, supra*, 47 Cal.App.5th at p. 980.)" (*Lewis, supra*, 11 Cal.5th at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low'" (*ibid.*), but "'[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.'" (*Curiel, supra*, 15 Cal.5th at p. 460, quoting *Strong, supra*, 13 Cal.5th at p. 708.)

**B.      Record of Conviction Refutes Bare Petition Allegations**

Here, petitioner filed a facially sufficient form petition, which entitled him to the appointment of counsel, a briefing schedule, and a prima facie determination. In briefing responsive to the petition, the prosecutor argued that based on the record of conviction, petitioner was the direct perpetrator. In reply, petitioner stated only, "[P]etitioner requests this Court independently review the record of conviction to determine whether he has presented a prima facie case for relief. Should this Court determine that petitioner has pled a prima facie case for relief, an order to show cause should issue and an evidentiary hearing to determine whether to vacate the convictions and to recall the sentence and resentence him on the remaining counts should follow." (Italics omitted.)

The uncontradicted record in this case reflects, on its face, that petitioner was the actual shooter who acted alone, and the trial court dismissed the petition for that reason. Reaching this conclusion did not require the trial court to make any factual findings, assess witness credibility, or resolve any disputed issues of fact, and the court did not do so. Rather, the court simply determined that the record of conviction ""refut[ed] the

12.

allegations made in the petition ….""""[7] (*Lewis, supra*, 11 Cal.5th at p. 971; accord, *Curiel, supra*, 15 Cal.5th at p. 464.) This result is expressly contemplated by the decisions in *Lewis*, *Strong*, and *Curiel*, and it is wholly consistent with the overall statutory purpose and the prima facie review step. Where the record refutes the petition allegations and is devoid of any indication that petitioner was an accomplice convicted under a now invalid theory of liability, dismissal of the form petition is precisely how the prima facie stage review is intended to function. (*Lewis, supra*, at p. 971; accord, *Curiel, supra*, at pp. 463–464).

My view that the trial court is not bound by facially sufficient but conclusory form petition allegations if those allegations are refuted by the record does not leave the petitioner without recourse. To the extent there are grounds supporting the petitioner's potential eligibility for relief under section 1172.6, notwithstanding a record that appears to refute the petition allegations, the petitioner has the opportunity, with the assistance of counsel, to alert the court to those grounds through briefing and argument. While the majority disagrees (maj. opn. *ante*, at p. 30), the proposition that the petitioner must respond in this circumstance rather than rest on the conclusory petition allegations is consistent with the statute, which provides for the appointment of counsel, briefing, argument, and a determination whether the petitioner has stated a prima facie case *after* a facially sufficient petition has been filed.

---

**7** As *Mares*, an analogous case, stated, "Our analysis does not violate the prohibition on factfinding or weighing evidence when considering whether the record of conviction precludes a section 1172.6 prima facie case. [Citation.] We are concluding only that uncontradicted facts in the record preclude Mares's assertion that Senate Bill 1437's changes mean he cannot be convicted of murder. We need not find or weigh any facts, because there are no facts to support Mares as the accomplice to another killer." (*Mares, supra*, 99 Cal.App.5th at pp. 1170–1171, review granted.) "Finding Mares pled a prima facie case involves *disregarding* all the facts rather than weighing any of them." (*Id.* at p. 1171.)

It also follows from, and is consistent with, general, longstanding legal principles. "Evidence Code section 500 places the burden of proof in any contested matter on the party who seeks relief.[8] 'The burden of proof is to law what inertia is to physics—a built-in bias in favor of the status quo.' (*Conservatorship of Hume* (2006) 140 Cal.App.4th 1385, 1388, citing Evid. Code, § 500.) 'That is, if you want the court to *do* something, you have to present evidence sufficient to overcome the state of affairs that would exist if the court did nothing.'" (*Vance v. Bizek, supra*, 228 Cal.App.4th at p. 1163, italics added.)[9]

The California Supreme Court relied on these principles in the context of section 1170.18, which provides a petition process for recall and resentencing following Proposition 47 (as approved by voters, Gen. Elec. (Nov. 4, 2014)).[10] The court

---

[8]    "Evidence Code section 500 provides, 'Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.'" (*Vance v. Bizek* (2014) 228 Cal.App.4th 1155, 1163, fn. 3.)

[9]    "[T]his general rule allocating the burden of proof does not supersede other, specific, rules established by statute or judicial decision [citation] ….." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1154, citing *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1211.)

[10]    Section 1170.18 provides, in relevant part, "(a) A person who, on November 5, 2014, was serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in their case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act.

"(b)    Upon receiving a petition under subdivision (a), the court shall determine whether the petitioner satisfies the criteria in subdivision (a). If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor pursuant to Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act, unless the court, in its

14.

explained, "Who bears the burden of proving newly relevant facts in the context of a section 1170.18 petition to recall a sentence?  The ultimate burden of proving section 1170.18 eligibility lies with the petitioner.  (See Evid. Code, § 500.)  In some cases, the uncontested information in the petition and record of conviction may be enough for the petitioner to establish this eligibility.  When eligibility is established in this fashion, 'the petitioner's felony sentence shall be recalled and the petitioner sentenced to a misdemeanor … unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.18, subd. (b).)  But in other cases, eligibility for resentencing may turn on facts that are not established by either the uncontested petition or the record of conviction.  In these cases, an evidentiary hearing may be 'required *if*, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact.'  (Cal. Rules of Court, rule 4.551(f); see also *People v. Sherow* (2015) 239 Cal.App.4th 875, 880 ['A proper petition could certainly contain at least [the petitioner's] testimony about the nature of the items taken. If he made the initial showing the court can take such action as appropriate to grant the petition or permit further factual determination.'].)"  (*People v. Romanowski* (2017) 2 Cal.5th 903, 916, italics added.)

The majority characterizes the foregoing as misplaced and cites to subdivision (d)(3) of section 1172.6.  (Maj. opn*., ante*, at pp. 31–32.)  Certainly, there are distinctions between section 1172.6 and both section 1170.18 and habeas proceedings (*Lewis, supra*, 11 Cal.5th at p. 966, fn. 5 [rejecting analogy to § 1170.18 as supporting

---

discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.…"

15.

position that court may review record of conviction without appointing counsel]; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 [habeas corpus procedures "imperfect analogy" to § 1172.6], abrogated on another ground in *Lewis, supra,* at pp. 962–963), but on this point, they are instructive (*Lewis, supra,* at p. 971; *Drayton, supra,* at p. 980). At the evidentiary hearing, the prosecutor bears "the burden [of proving], beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (d)(3)), but I disagree that the prosecutor's burden of proof at the evidentiary stage has the effect of relieving the petitioner of the initial burden of identifying a dispute under section 1172.6 at the prima facie stage. In the majority's view, the petitioner does so with the filing of a facially sufficient form petition and I agree that in many cases this will suffice, but that is because the face of the record of conviction will *support* the petition by evidencing the existence of a dispute over whether the petitioner was convicted under a valid or an invalid theory of liability, or will at least evidence a potential dispute. The trial court may then apply the *Curiel* test to determine whether the petitioner has made a prima facie showing, necessitating an evidentiary hearing.

The problem lies in cases such as this, where the form petition allegations are wholly contradicted by a record that indicates the petitioner was the direct perpetrator. It is in this context that the general rule set forth in Evidence Code section 500 applies to require the petitioner to identity *some* fact, theory, or argument that might bring petitioner's conviction into question under the changes in the law under Senate Bills 1437 and 775.[11] Requiring the litigant seeking relief to identify the basis in the law for the

---

[11]    This case does not present the opportunity to consider what might be sufficient to make the prima facie showing in such a situation, and I decline to speculate. As *Mares* observed, "It would require an unlikely situation for a petitioner to properly allege such facts after pleading guilty in the face of a murder charge based on uncontradicted

relief sought when it is not apparent from the record—that is, make a showing of eligibility—is consistent with generally applicable legal principles and does not place a burden on the petitioner that is inconsistent with the statutory language or legislative intent, add steps to the prima facie stage, conflate the prima facie stage with the later evidentiary stage, or lessen the prosecutor's burden of proof at the evidentiary stage. To the contrary, it is consistent with the principles articulated in *Lewis*, *Strong*, and *Curiel*, and it simply recognizes that in those cases in which the record contradicts the form petition allegations by showing the petitioner was the direct perpetrator or is otherwise not eligible for relief, the petitioner has an opportunity, aided by counsel, to avoid dismissal of the petition by demonstrating the existence of a dispute warranting an evidentiary hearing; that is, to state a prima facie case.[12] (*Strong, supra*, 13 Cal.5th at p. 708; see *Lewis, supra*, 11 Cal.5th at pp. 970–971.) If the petitioner cannot or does not do so, the court is justified in dismissing the petition. (*Strong, supra*, at p. 708; *Lewis, supra*, at p. 971.) This is entirely consistent with general legal principles that apply when a litigant seeks relief (Evid. Code, § 500), and the intent of the Legislature to provide a limited but nevertheless meaningful prima facie review step (*Lewis, supra*, at p. 972).

As stated, plea cases present added challenges given the often limited nature of the record and, generally, a lack of factual findings entitled to preclusive effect (*Curiel, supra*, 15 Cal.5th at pp. 450–451; *Strong, supra*, 13 Cal.5th at p. 715), but if the Legislature had intended form petition allegations to be binding and sufficient to overcome a contradictory record in cases such as this, it could have designed, or later amended, the statute accordingly. Notably, it had the benefit of the decision in *Lewis*

---

evidence that they were the actual killer, but we need not foreclose the *possibility* of such a petition." (*Mares, supra*, 99 Cal.App.5th at p. 1169, review granted.)

[12] As *Lewis* recognized, "Appointing counsel to assist a petitioner in navigating these complex theories, upon the filing of a facially sufficient petition, promotes the reliability of section [1172.6]'s petitioning process and thereby advances Senate Bill 1437's stated purpose." (*Lewis, supra*, 11 Cal.5th at p. 967.)

when Senate Bill 775 was enacted. (See *People v. Frahs* (2020) 9 Cal.5th 618, 634 ["[T]he Legislature 'is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted.'"].) Instead, prima facie review applies in all cases, and the statute must be interpreted reasonably so that the prima facie review functions as intended and permits trial courts to dismiss clearly unmeritorious petitions such as that filed in this case. (*Lewis, supra*, 11 Cal.5th at p. 971.)

## C.     Import of *Curiel*

The extension of the rule from *Curiel* to the facts here lies at the core of our divergent views in this case. In *Curiel*, the California Supreme Court addressed the question, left open in *Lewis*, of what is substantively required at the prima facie stage to show, under section 1172.6, subdivision (a)(3), that "'"[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to … Section 188 or 189 made effective January 1, 2019" .…'" (*Curiel, supra*, 15 Cal.5th at p. 450, quoting *Strong, supra*, 13 Cal.5th at p. 708.) *Curiel* concluded, "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to Section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. (*Lewis, supra*, 11 Cal.5th at p. 971.) *And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense. If only one element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of other elements.*" (*Curiel, supra*, at p. 463, italics added.) My colleagues interpret this language in *Curiel* as broadly applicable at the prima facie review stage, compelling an evidentiary hearing in every case unless the record conclusively establishes all the elements of the offense under a

valid theory.  In my view, the relevant language is more limited and must be considered in context.[13]

*Curiel* did not involve a conviction by plea with facially sufficient but otherwise bare petition allegations and a record of conviction that contradicted those allegations by showing that the petitioner was the direct perpetrator.[14]  (*Curiel, supra*, 15 Cal.5th at pp. 440–441.)  The record will necessarily inform the inquiry and outcome (*Lewis, supra*, 11 Cal.5th at p. 971), and because the defendant in *Curiel* was convicted by a jury, the record was well developed.  On its face, the record *supported* the petition allegations by showing that Curiel fell within the class of defendants who may be entitled to benefit from the changes in the law:  that is, liability predicated on actions taken as an

---

[13]     Another Court of Appeal recently relied on this language in *Curiel* and reversed the trial court's order dismissing the petition at the prima facie stage.  (*People v. Estrada* (2024) 101 Cal.App.5th 328, 337.)  In that case, the trial court concluded the petitioner was the actual killer and denied the petition, but the appellate court reversed, concluding, "At the prima facie stage, the evidence contains testimony that could potentially suggest multiple perpetrators were involved, potentially undermining the Attorney General's argument that Estrada was the actual killer or direct perpetrator.  Beyond Estrada, there were two people with blood on their clothes, and one of the individuals carried a box cutter.  Thus, the preliminary hearing testimony 'standing alone, does not conclusively establish as a matter of law that [Estrada] was the actual killer, acted with intent to kill or actual malice, or was a major participant in an underlying crime who acted with reckless indifference to human life' without making factual findings and credibility determinations." (*Id.* at p. 340, quoting *People v. Flores, supra*, 76 Cal.App.5th at pp. 991–992.)  The facts in *Estrada* are not analogous to those here and, therefore, I express no view on the ultimate outcome.  However, as explained herein, I disagree with the proposition that the language in *Curiel* relied upon—that the petition "allegation is not refuted by the record unless the record conclusively establishes every element of the offense"—applies in cases such as this where the record demonstrates, without dispute, that petitioner was the direct perpetrator.  (*Curiel, supra*, 15 Cal.5th at p. 463.)

[14]     As *Mares* aptly explained, "the form petition's conclusory assertion *is* sufficient where the record contains a possibility that the defendant could have been guilty under a now-abrogated accomplice theory." (*Mares, supra*, 99 Cal.App.5th at p. 1169, review granted.)  This was the situation in *Curiel*.  The form petition's conclusory assertion is *not* sufficient where "the record *forecloses* such a possibility" (*Mares, supra*, at p. 1169, review granted), which is the situation in this case, as it was in *Mares*.

19.

accomplice to murder where a now invalid theory of liability was in play. (*Curiel, supra*, at pp. 445–446.) Because the petition and the record together showed that Curiel might be eligible for relief from his murder conviction under section 1172.6, he "put[] at issue all elements of the offense under a valid theory" (*Curiel, supra*, at p. 462), and "unless the record conclusively establishe[d] every element of the offense" under a valid theory, the record did not refute the petition allegations (*id.* at p. 463). The court explained that a finding of intent to kill, viewed in isolation, does not establish either a sufficient mens rea or a sufficient actus reus under the valid direct aiding and abetting theory. (*Id.* at p. 441.) "[T]he jury did not necessarily find the requisite mens rea for direct aiding and abetting liability," which left the theory on which it relied to convict Curiel unclear from the record. (*Id.* at p. 467.)[15] As a result, the record did *not* foreclose the possibility that Curiel was convicted under the invalid theory as a matter of law, he made a prima facie case for relief, and an evidentiary hearing was required. (*Curiel, supra*, at pp. 441, 470.)

Relying on *Curiel*, the majority concludes that the form petition is sufficient to "put[] at issue all elements of the offense under a valid theory" (*Curiel, supra*, 15 Cal.5th at p. 462), and because the record of conviction does not "conclusively establish[] every element of the offense," the trial court's ruling must be reversed with instructions to issue an order to show cause (*id.* at p. 463).[16] (Maj. opn. *ante*, at p. 30.) Without question,

---

[15] The court did "not decide whether the jury necessarily found the requisite actus reus .…" (*Curiel, supra*, 15 Cal.5th at p. 467.)

[16] The majority explains in detail why the record, including the information and preliminary hearing transcript, is not conclusive within the meaning of *Curiel*. I do not take issue with the broader general principles set forth, and it may well be that in many cases, the preliminary hearing transcript will be of limited value given the prohibition against factfinding and weighing of evidence, but in my view, those principles are not controlling in this case. Rather, as discussed herein, the record of conviction—specifically, the preliminary hearing transcript consisting of eyewitness testimony that was neither inconsistent nor controverted—reflects that petitioner was the shooter and acted alone. Absent any dispute raised on that point, the trial court properly relied on the

"'[c]ourts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction,'" as the majority states. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 197–198, quoting *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) However, "'"it is axiomatic that cases are not authority for propositions not considered"'" (*People v. Gray* (2023) 15 Cal.5th 152, 169, fn. 5; accord, *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1252; *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11), and *Curiel* did not speak to prima facie review in a plea case where the petition included only the bare allegations needed for facial sufficiency and the uncontradicted record reflected the petitioner was the direct perpetrator acting alone.

The majority reasons that nothing suggests the high court would apply a different test to a different set of facts. (Maj. opn. *ante*, at p. 19, fn. 9.) I agree both that we are bound by our high court's holding and that, in general, its dictum "has persuasive value that we cannot ignore absent a compelling reason" (*People v. Njoku* (2023) 95 Cal.App.5th 27, 43; accord, *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1093), but *Curiel* did not address this circumstance, either directly or indirectly. Therefore, until we receive further clarification from the court in *Patton*, I would adhere to the aforementioned bedrock principle.

There is a material distinction between a case where the petition and the record establish the existence of a dispute concerning whether the petitioner was convicted under a now invalid theory and a case where the facially sufficient but bare petition allegations are wholly contradicted by a record of conviction showing direct perpetration of the crime. The high court made a point of noting the limitation of its holding,[17] and

---

record of conviction to find against petitioner and dismiss his meritless petition at the prima facie stage. (*Curiel, supra*, 15 Cal.5th at pp. 463–464.)

[17] The court stated, "Finally, we note that our holding today does not necessarily apply to other cases where the jury found intent to kill, or even other cases where the jury found true the gang-murder special circumstance. The jury instructions in other cases might be materially different, and they might therefore have required different factual

21.

the inherent logic of the test in *Curiel* is obvious when the petitioner is or may be an accomplice challenging his or her conviction on the ground that it rests on a now invalid theory of liability. However, in plea cases where no factual dispute over whether the conviction was based on an invalid theory is apparent from the record because the record instead reflects petitioner was the direct perpetrator acting alone, and petitioner has done nothing beyond filing a form petition to identify a basis for relief under section 1172.6, the utility of applying a test that asks whether every element of the offense has been conclusively established by the record under a valid theory is not clear. Instead, I believe the trial court may dismiss the petition in this circumstance, an outcome that is consistent with the statutory purpose, legislative intent, and the California Supreme Court's decisions interpreting section 1172.6 to date, including *Curiel*. I also believe it facilitates the prima facie review as it was intended to function in cases like this, which is to weed out clearly meritless petitions while ensuring the bar remains low. (*Lewis, supra*, 11 Cal.5th at pp. 971–972; accord*, Curiel, supra*, 15 Cal.5th at p. 460; *Mares, supra*, 99 Cal.App.5th at p. 1170, review granted.)

### D.     Dismissal of Petition Consistent with Statutory Intent and *Curiel*

In sum, section 1172.6 is intended to benefit participants who were possibly convicted of murder, attempted murder, or manslaughter under a theory of liability that is no longer valid following the changes to sections 188 and 189 under Senate Bill 1437.

---

findings by the jury. We hold *only* that under the jury instructions here, the findings the jury must have made are insufficient to conclusively establish that Curiel is liable for murder under current law. The jury could have relied on the natural and probable consequences doctrine to convict Curiel of murder, and the findings required under that theory—even when combined with the finding of intent to kill required by the gang-murder special circumstance—do not encompass all of the elements of any theory of murder under current law. These findings were therefore insufficient to rebut Curiel's allegation that he could not be convicted of murder under current law, and the trial court erred by denying Curiel's petition for resentencing at the prima facie stage." (*Curiel, supra*, 15 Cal.5th at p. 471, italics added.)

22.

(*Lewis, supra*, 11 Cal.5th at pp. 971, 972, fn. 6; accord, *Curiel, supra*, 15 Cal.5th at pp. 463–464). Direct perpetrators of murder, attempted murder, and manslaughter are *not* the intended beneficiaries of section 1172.6 and are categorically ineligible for relief. (*Strong, supra*, 13 Cal.5th at p. 715; accord, *Curiel, supra*, at p. 460; see *Delgadillo, supra*, 14 Cal.5th at p. 233.) The focus of a trial court's inquiry in determining whether the petitioner has stated a prima facie case is informed by the petition, the record, and any arguments the parties advance, and that inquiry is tethered to the petition, record, and argument at issue in each case. (*Curiel, supra*, at p. 460; *Lewis, supra*, at p. 971.) Where, as in *Curiel*, the petition and the record affirmatively reflect that the petitioner was an accomplice whose jury was instructed on valid and now invalid theories of aiding and abetting, the issue of whether the petitioner was convicted under a now invalid theory is squarely presented and courts must ask whether the record conclusively establishes all the elements of the crime under a valid theory. (*Curiel, supra*, *at* pp. 462–463.) If the record does not so establish, it remains possible the petitioner was convicted under the invalid theory and the matter must proceed to an evidentiary hearing. (*Id.* at pp. 460, 470.)

However, where the record refutes the bare petition allegations because it affirmatively reflects the petitioner was the direct perpetrator who acted alone, and the petitioner fails to articulate any facts or theory that might bring his conviction within the purview of section 1172.6, the petitioner has not met his or her burden of demonstrating a prima facie case for relief because no dispute has been raised concerning whether the petitioner was possibly convicted under a now invalid theory. In this circumstance, there is no meaningful benefit in asking whether the record of conviction by plea conclusively establishes all the elements of the crime under a valid theory. Instead, the petition is meritless and the court is entitled to dismiss it. (*Curiel, supra*, 15 Cal.5th at p. 460; *Strong, supra*, 13 Cal.5th at p. 708; *Lewis, supra*, 11 Cal.5th at p. 971; see *Delgadillo, supra*, 14 Cal.5th at p. 233.)

*Curiel* was a jury trial case, as were *Gentile*, *Lewis*, *Strong*, and *Delgadillo*, and, therefore, those case records were necessarily more developed than cases resolved by plea. Nevertheless, convictions by plea are expressly eligible for relief under section 1172.6 and are subject to prima facie review informed by the record in the case. (§ 1172.6, subd. (a)(2).) As such, a petitioner must show there is a prima facie case for relief irrespective of whether the conviction followed a jury trial or a plea agreement, which requires a showing that "The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." *Id.*, subd. (a)(3).) There is no indication the Legislature intended cases resolved by plea to escape meaningful evaluation at the prima facie stage and, as discussed, the California Supreme Court has interpreted the statute as intended to afford relief to those convicted under a now invalid theory while permitting the dismissal of obviously meritless petitions.

Courts must take care not to demand too much of the petitioner at the prima facie stage, but they must also not demand so little that the prima facie review is rendered meaningless and direct perpetrator cases with uncontroverted records of conviction move to the next stage based on nothing more than a form petition with the requisite boxes checked. If, under the circumstances in this case, filing a form petition with boxes checked is sufficient to justify an evidentiary hearing, the prima facie review stage is rendered hollow, our high court's express endorsement of limited record review and dismissal of petitions where the record refutes the petition allegations is not given effect, clearly meritless petitions will proceed to an evidentiary hearing, and already swamped trial courts will be needlessly burdened by conducting evidentiary hearings on meritless petitions. This is not a small matter, considering that a significant percentage of cases are resolved by plea (e.g., *Lafler v. Cooper* (2012) 566 U.S. 156, 170; *Harris v. Superior Court, supra*, 1 Cal.5th at p. 992; *In re Chavez* (2003) 30 Cal.4th 643, 654, fn. 5), and I am unpersuaded that this result was intended by the Legislature or compelled by *Curiel*.

24.

I agree that we are bound to apply the rule in *Curiel* in cases where the petition and record show that the petitioner may have been convicted of murder, attempted murder, or manslaughter as an accomplice under a now invalid theory (*Curiel, supra*, 15 Cal.5th at p. 463), but the trial court here was not tasked with measuring a valid aiding and abetting theory against an invalid aiding and abetting theory and attempting to determine whether every element of the offense was established under the valid theory. The *only* theory at play was a direct perpetrator theory and absent petitioner articulating how, despite the record, he could not presently be convicted of attempted murder, the trial court was entitled to make a credibility determination adverse to him and dismiss the petition. (*Lewis, supra*, 11 Cal.5th at p. 971; accord, *Curiel, supra*, at p. 460.)

In this circumstance, requiring petitioner, as the moving party, to minimally assist himself by informing the court and the prosecutor of a basis for what appears to be a meritless claim does not contravene *Curiel*. To the contrary, if support for the claim that petitioner could not now be convicted of attempted murder existed despite a record that refuted the claim, he had the opportunity, with the aid of counsel, to identify that support. (Evid. Code, § 500; *Vance v. Bizek, supra*, 228 Cal.App.4th at p. 1163 & fn. 3; see *People v. Romanowski, supra*, 2 Cal.5th at p. 916; see also *Curiel, supra*, 15 Cal.5th at p. 440.) I have explained why I do not believe form petition allegations overcome a wholly contradictory record and why I do not believe the rule articulated in *Curiel* is controlling in plea cases where the preliminary hearing transcript affirmatively reflects petitioner was the direct perpetrator. The majority's contrary position that the form petition puts all the elements of the offense at issue under a valid theory and that the rule articulated in *Curiel* extends to all cases divorces *Curiel* from its context. For the reasons previously set forth, I am not persuaded that the *Curiel* court's silence on the standard to be applied in these circumstances warrants the extension proposed by the majority in this case.

Specifically, *Curiel* was not called upon to decide whether form petition allegations are sufficient to overcome a contradictory record and make a prima facie

showing, and *Curiel* did not involve a record that exclusively reflected the petitioner was a direct perpetrator. Instead, the record of conviction evidenced on its face that Curiel was an accomplice whose jury may have convicted him under a now invalid theory it was instructed with rather than under the valid theory. Curiel, therefore, unequivocally fell within the category of defendant the Legislature was targeting in enacting section 1172.6 and, in that context, he put all of the elements of his murder conviction under a valid theory at issue (*Curiel, supra*, 15 Cal.5th at p 462), and the record would not refute his allegations "unless [it] conclusively establishe[d] every element of the offense" (*id.* at p. 463).

The high court has explained that prima facie review will not screen out all petitions that lack merit (*Lewis, supra*, 11 Cal.5th at p. 968), but where the record contradicts the petition and reflects, exclusively, conviction as the direct perpetrator, surely it requires more than a bald petition allegation. The process provides the petitioner, with aid of counsel, the opportunity to explain the basis for relief in this circumstance. When the petitioner fails to do so, as in this case, the trial court is entitled to conclude the petition is meritless and dismiss it. (*Id.* at pp. 971–972.) This result reconciles the statutory purpose, legislative intent, and our high court's decisions interpreting section 1172.6. I harbor no illusion that assessing a petition at the prima facie stage will be straightforward and easy in every case, and the body of case law to date proves this point. The inquiry is necessarily nuanced and fact-specific, but in my view, this is a straightforward case and the majority's extension of *Curiel* to this readily distinguishable circumstance constitutes a marked departure under the law.

Therefore, I respectfully dissent.

MEEHAN, J.

26.